UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Republic Windows & Doors, LLC, | Case No. 08-34113 |
| Debtor. | Judge Jacqueline P. Cox |
| Phillip D. Levey, not individually but solely in his capacity as duly appointed Chapter 7 Trustee of the Bankruptcy Estate of Republic Windows & Doors, LLC, | |
| Plaintiff, | |
| v. | Adv. No. 10-02526 |
| Hanson's Window & Construction, Inc., a/k/a Hanson's Window & Siding LLC, a/k/a Hanson's Window, a/k/a IQ Intel, | |
| Defendant. | |

Memorandum Opinion on
Defendant's Motion to Dismiss First Amended Complaint For Lack of Subject
Matter Jurisdiction and Failure to State a Claim

This matter is before the Court on Defendant's Motion to Dismiss Counts I - VII of Trustee's First Amended Complaint for lack of subject matter jurisdiction and Count VIII for failure to state a claim. For the reasons that follow the Motion to Dismiss is DENIED as to Counts I - VII and GRANTED as to Count VIII.

I.   Facts and Background

On December 12, 2008, a voluntary petition for relief was filed by Republic Windows and Doors, LLC ("Debtor") under Chapter 7 of the Bankruptcy Code, in

the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. The Debtor was an Illinois-based supplier of vinyl replacement windows and doors. The Plaintiff herein, Chapter 7 Trustee Phillip D. Levey (the "Trustee"), alleges in the First Amended Complaint that prior to the commencement of Debtor's petition, Hanson's Windows & Doors, Inc., a/k/a Hanson's Window and Siding, LLC, a/k/a Hanson's Window, a/k/a IQ Intel (the "Defendant") was one of the Debtor's largest accounts. The Defendant is owned by Brian Elias ("Elias").

### a. Debtor's Financial Condition

The Trustee alleges that at all times relevant to the allegations contained in the complaint, the Debtor was insolvent, undercapitalized and unable to pay its debts as and when they became due. The Trustee maintains that the Debtor's books and records reveal the following: in 2007, the Debtor's sales dropped and some of its largest customers filed for bankruptcy relief; the Debtor forecasted that it would lose approximately $2.6 million in 2008; as of December 31, 2007, the Debtor's balance sheet was insolvent at book value, with shareholder's equity reported as negative $13.2 million; the Debtor's trade payables increased from approximately $4 million at the beginning of 2007 to approximately $6 million at the end of 2007; that during 2008, the Debtor's lenders stopped funding the Debtor; in May of 2008, the Debtor's revolving loan lender issued it a default notice; in 2008, the Debtor's sales continued to decline and its losses continued to increase; at all times during 2008, the value of the Debtor's assets was less than the value of its liabilities; at all times during 2008, the Debtor had insufficient capital to carry on its business; and at all times during 2008, the Debtor incurred debts beyond its ability to pay them.

### b. The Echo Scheme

According to the Trustee, by late 2007 or early 2008, the Debtor's financial condition worsened to the point where it was inevitable that the Debtor would shut

down and file for bankruptcy. The Trustee alleges that during this same time, certain of the Debtor's insiders, including Richard Gillman, Timothy Widner, Michael Kayman and Barry Dubin (the "Echo Conspirators") embarked on a plan to loot the Debtor of its cash and equipment and start a successor business known as Echo Windows & Doors, LLC ("Echo") using the Debtor's cash and equipment. The Trustee alleges that in an effort to help finance their new operation, the Echo Conspirators approached Elias during the middle or latter part of 2008 with an opportunity to acquire an equity interest in Echo. The Trustee contends that in November of 2008, Elias acquired a 25% interest in Echo in exchange for $800,000. He also maintains that Elias' investment in Echo was indirectly funded by the Debtor through goods shipped to the Defendant that were not paid for.

The Trustee alleges that during November and December 2008, at a time when the Echo Conspirators and the Defendant knew that the Debtor's demise was imminent, the Defendant stopped paying for goods ordered from the Debtor, while simultaneously increasing the amount of goods it ordered. In particular, the Trustee alleges that during November of 2008, the Defendant increased its accounts payable to the Debtor by approximately 50% while the Debtor's total accounts receivable increased by only 5% during the same period of time. He also alleges that the Defendant ordered and received $50,000 in goods during the first week of December, at a time when the Debtor placed a shipping hold on its other customers. The Trustee maintains that these actions indicate that neither the Defendant, nor the Echo Conspirators, who controlled the Debtor, intended that the Defendant would pay for the goods delivered during this period of time.

II. Discussion

    a. Rule 12(b)(1)

The Defendant first argues that Counts I through VII should be dismissed because the Court lacks subject matter jurisdiction to hear the Trustee's causes of action for breach of contract (Count I), unjust enrichment (Count II), turnover of property pursuant to 11 U.S.C § 542 (Count III), recovery of fraudulent transfers (Counts IV, V, and VI), and recovery of avoided transfers (Count VII). He posits that dismissal of these claims is warranted in light of the jurisdictional limitations on bankruptcy courts imposed by *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

Federal Rule of Civil Procedure 12(b)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b) requires the dismissal of claims over which the court lacks subject matter jurisdiction. When "reviewing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may look beyond the complaint to pertinent evidence submitted by the parties." *In re Dental Profile*, No. 09 C 6160, 2010 WL 431590, at *1 (N.D. Ill. 2010). "A plaintiff faced with a properly supported 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met." *Id.* at *1.

    b. Subject Matter Jurisdiction

The subject matter jurisdiction of bankruptcy courts is governed by 28 U.S.C. § 1334(b). That section provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

In turn, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in or related to a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). A bankruptcy judge may also hear and enter a final judgment in a non-core proceeding that is otherwise related to the bankruptcy case if the parties consent to a final adjudication by a bankruptcy judge. *Id.* § 157(c)(2). If the parties do not consent the bankruptcy judge is limited to submitting proposed findings of fact and conclusions of law to the district court for entry of a final judgment order after de novo review of timely objections. 28 U.S.C. §§ 157(c)(1) and 157(c)(2). "A non-core proceeding is 'related' to a bankruptcy case only when 'it affects the amount of property available for distribution or the allocation of property among creditors." *In re Olde Prairie Block Owner, LLC*, No. 10 B 2268, 2011 WL 3792406, at *6 (Bankr. N.D. Ill. Aug. 25, 2011) (*quoting In re Xonics, Inc.*, 813 F.2d 127, 130 (7th Cir. 1987)). *See also* Ralph Brubaker, *Article III's Bleak House (Part I): The Statutory Limits of Bankruptcy Judges' Core Jurisdiction*, 31 Bankr. L. Letter No. 8 (2011).

c. Counts I - VII are related to the Debtor's Bankruptcy Case

The Defendant herein asks this Court to dismiss the amended complaint for lack of subject matter jurisdiction based on the United States Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). In the bankruptcy case at issue in *Stern*, a creditor filed an unliquidated proof of claim in the bankruptcy case asserting a defamation claim. The debtor thereafter filed a state law counterclaim against the creditor for tortious interference. Over the objection of the creditor, the

-5-

Bankruptcy Court for the Central District of California determined that the debtor's counterclaim was a core proceeding and awarded the debtor damages.

The Supreme Court ultimately held that while the bankruptcy court had the statutory authority to enter a final judgment on the debtor's counterclaim pursuant to the plain text of 28 U.S.C § 157(b)(2)(C), it lacked the constitutional authority to do so under Article III of the Constitution. *Stern*, 131 S.Ct. at 2608. The Court revisited its plurality decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52 (1982), where it held that "new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide [a] state-law contract claim" against an entity that was not otherwise part of the bankruptcy proceedings. *Stern*, 131 S.Ct. at 2609-10 (*quoting Marathon*, 458 U.S. at 87 n.40). Similarly, Stern held that the "state law counterclaim for tortious interference was independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim [for defamation] in bankruptcy." *Id.* at 2611. The Court explained that the debtor's claim was "in no way derived from or dependent upon bankruptcy law . . . ." *Id.* at 2618.

Here, the Defendant relies on *Stern* for its assertion that this Court lacks subject matter jurisdiction to finally determine the Trustee's claims in his First Amended Complaint. Contrary to the Defendant's broad reading of *Stern*, that decision does not implicate subject matter jurisdiction. There the Court articulated quite clearly that "[s]ection 157 allocates the authority to enter final judgment between the bankruptcy court and the district court . . . That allocation *does not implicate questions of subject matter jurisdiction*." *Stern*, 131 S.Ct. at 2607.[1]

---

[1] *See* Ralph Brubaker, *Article III's Bleak House (Part I): The Statutory Limits of Bankruptcy Judges' Core Jurisdiction*, 31 Bankr. L. Letter No. 8 (2011). There the author opined: "The Court's decision [in *Stern v. Marshall*] that [s]ection 157's allocation of adjudicatory authority between the bankruptcy court and the district court 'does not implicate questions of subject matter jurisdiction' means that the full

(emphasis added). *Stern* addresses the authority of bankruptcy courts to enter final judgment assuming that subject matter jurisdiction exists. *Fairchild Liquidating Trust v. N.Y. (In re Fairchild Corp.)*, 452 B.R. 525, 530 n.14 (Bankr. D.Del. 2011). "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

In any event, this Court has authority to hear this proceeding pursuant to section 157(c)(1) which governs non-core related proceedings. The Defendant argues in its Motion that the Trustee "seeks to augment the Debtor's bankruptcy estate." (Defendant's Motion to Dismiss, Dkt. No. 26, p. 6). This Court agrees. Indeed, if the Trustee prevails on Counts I through VII of the Complaint, he could augment the bankruptcy estate for the benefit of creditors. These are precisely the types of claims which are "related to" the bankruptcy. *See Xonics, Inc. v. First Wisconsin Fin. Corp.*, 813 F.2d 127, 131 (7th Cir. 1987) ("There is jurisdiction under § 157(c)(1) only when the dispute is "related to" the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors.").

In Count I of the First Amended Complaint alleging Breach of Contract, the Trustee maintains that Defendant failed to pay Debtor "an amount not less than $915,755.59." If the Trustee prevails on this claim, he will bring money into the bankruptcy estate for distribution, affecting the allocation of property among creditors. Accordingly, the Court has related-to jurisdiction over Count I of the First Amended Complaint.

---

extent of a bankruptcy judge's authority need not be established on the face of the pleadings (as is typically the rule for subject-matter jurisdiction). . . A bankruptcy judge only 'lack[s] the constitutional authority to enter a final judgment on a state law counterclaim' to the extent that a particular issue of fact or law 'is not resolved in the process of ruling on a creditor's proof of claim."

In Count II of the First Amended Complaint alleging Unjust Enrichment, the Trustee maintains that the Debtor provided the Defendant with certain goods at the request of the Defendant and that the Defendant failed to pay for the goods. If the Trustee prevails on this claim, he will bring money into the bankruptcy estate for distribution, affecting the allocation of property among creditors. Accordingly, the Court has related-to jurisdiction over Count II of the First Amended Complaint.

In Count III of the First Amended Complaint seeking turnover of property pursuant to 11 U.S.C. § 542, the Trustee maintains that the Defendant is in possession, custody and control of an unpaid obligation which is property of the estate pursuant to 11 U.S.C. § 541. If the Trustee prevails on this claim, he will bring money into the bankruptcy estate for distribution, affecting the allocation of property among creditors. Accordingly, the Court has related-to jurisdiction over Count III of the First Amended Complaint.

Count IV of the First Amended Complaint alleges that fraudulent transfers were made in violation of 11 U.S.C. § 544 and 740 ILCS 160/5. The Trustee maintains that the transfers were made to the Defendant with actual intent to hinder, delay and defraud the Debtor's creditors.

Section 544(b)(1) provides, in part that:

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Section 5 of the Illinois Uniform Fraudulent Transfer Act ("IFTA"), 740 ILCS 160/5 provides, in part that:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1) with actual intent to hinder, dely, or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor;
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

If the Trustee prevails on this claim, he will bring money into the bankruptcy estate for distribution, affecting the allocation of property among creditors. Accordingly, the Court has related-to jurisdiction over Count IV of the First Amended Complaint.

In Count V of the First Amended Complaint, the Trustee maintains that the Defendant made certain fraudulent transfers pursuant to section 6(a) of the IFTA and 11 U.S.C. § 544 of the Bankruptcy Code. Section 6(a) of the IFTA provides that:

> A transfer made or obligation incurred by a debtor that is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

If the Trustee prevails on this claim, he will bring money into the bankruptcy estate for distribution, affecting the allocation of property among creditors. Accordingly, the Court has related-to jurisdiction over Count V of the First Amended Complaint.

In Count VI of the First Amended Complaint, the Trustee seeks to avoid alleged fraudulent transfers pursuant to 11 U.S.C § 548. Section 548 provides in part that:

> (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract)

>   of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily -
>   (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>   (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
>   (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>   (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>   (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . . .

If the Trustee prevails on this claim, he will bring money into the bankruptcy estate for distribution, affecting the allocation of property among creditors. Accordingly, the Court has related to jurisdiction over Count VI of the First Amended Complaint.

In Count VII of the First Amended Complaint, the Trustee seeks to recover avoided transfers pursuant to 11 U.S.C. § 550. The Trustee alleges that the Defendant was the initial transferee of each fraudulent transfer. Pursuant to section 550(a) "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . . ." If the Trustee prevails on this claim, he will bring money into the bankruptcy estate for distribution, affecting the allocation of property among creditors. Accordingly, the Court has related-to jurisdiction over Count VII of the First Amended Complaint.

-10-

Each of the claims in Counts I-VII of the Trustee's First Amended Complaint, if successful, will bring more money into the bankruptcy estate for allocation among creditors. The Trustee contends that there remains due and owing from the Defendant to the estate no less than $915,755.59. The recovery of these funds would augment the bankruptcy estate, making these proceedings non-core, but related. The Court therefore determines that it has related-to jurisdiction as to Counts I - VII of the First Amended Complaint pursuant to 28 U.S.C. § 157(c)(1).

The Defendant has stated that it will not consent to a final determination by this Court. Its decision in that regard does not preclude the Court from hearing this matter and certainly does not warrant the dismissal of this proceeding. Section 157(c)(1) specifically authorizes the submission of proposed findings of fact and conclusions of law by bankruptcy judges where the parties do not consent, which appears to be the case here. *Stern*, 131 S.Ct. *at 2620* ("the current bankruptcy system also requires the district court to review *de novo* and enter final judgment on any matters that are 'related to' the bankruptcy proceedings, §157(c)(1) . . . .").

The Defendant next argues that even the submission of findings of fact and conclusions of law "will be impermissibly exercising judicial power reserved to the district court by Article III of the Constitution," and that "it is unrealistic to think that the district court's view of a case presented for de novo review will be completely unaffected by the bankruptcy court's proposed findings of fact and conclusions of law. (Defendant's Reply, Dkt. No. 31, p. 9). This is contrary to the holding of *Stern*. Nothing in that decision can be read to preclude this Court from submitting proposed findings of fact and conclusions of law to the district court. There the Court addresses this issue by noting that "Pierce has not argued that the bankruptcy courts 'are barred from hearing all counterclaims' or proposing findings of fact and conclusions of law on those matters, but rather it must be the district

court that finally decides them." *Stern*, 131 S.Ct. at 2620. The Defendant has not offered any case law in support of its suggestion that the district courts rubber stamp the proposed findings submitted by bankruptcy judges. The *Stern* opinion by its own terms "is a narrow one" and this Court declines to disregard the Supreme Court's position on the validity of the process by which proposed findings of fact and conclusions of law are submitted to the district court.

The Defendant's The Motion to Dismiss Counts I - VII is DENIED.

### d. The Trustee Has Not Stated a Plausible Claim in Count VIII of the First Amended Complaint

Finally, the Defendant moves to dismiss Count VIII of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b).

To satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008(a), the complaint must contain "a short and plain statement showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (*quoting Bell Atl.*, 550 U.S. at 556). To prevail on a motion to dismiss a complaint pursuant to Rule 12(b)(6) it must be clear in the pleadings that no set of facts could be proven in support of the plaintiff's claims that would entitle him to

the relief requested. *Panarus v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791 (7th Cir. 1996).

In Count VIII, the Trustee seeks the disallowance of claims pursuant to 11 U.S.C. §§ 502(d) and 502(j). Section 502(d) provides in relevant part that:

> the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

Until the Defendant satisfies its liability, section 502(j) provides that a claim that has previously been allowed or disallowed may be reconsidered for cause. 11 U.S.C. § 502(j).

According to the allegations of the Complaint, the Debtor and Defendant were engaged in business transactions in which the Defendant ordered certain goods from the Debtor for which the Defendant was to pay. The Trustee seeks to disallow any claim held by the Defendant or that it may later acquire. The Defendant argues that because it has not filed a proof of claim in the bankruptcy case at this time, the Trustee's causes of action under sections 502(d) and 502(j) must fail. The Court agrees. Although the Defendant has indicated that it "would assert a defense of set-off against Count III of the Complaint for turnover of the estate . . . ." (Defendant's Motion to Dismiss, Dkt. No. 25, p. 6), the claims registry does not reflect a proof of claim by the Defendant. The Court declines to allow the Trustee to disallow a claim until such a claim has been filed. In the event that the Defendant does file a proof of claim at some future date, the Trustee may consider reinstating his claim for relief under sections 502(d) and 502(j).

Therefore, the Motion to Dismiss Count VIII is GRANTED.

## III. Conclusion

The Defendant's Motion to Dismiss Counts I - VII is DENIED as this Court has related to jurisdiction pursuant to 28 U.S.C. § 157(c)(1).

The Defendant's Motion to Dismiss Count VIII is GRANTED.

DATED: December 6, 2011               ENTER:

*Jacqueline P. Cox*
J.P.Cox
Jacqueline P. Cox
U.S. Bankruptcy Judge